# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

JAN 25 2018

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 1:18-SW-48 |
| LG cellular phone, Model LG-LS755 MEID 089806183108484992; assigned telephone number 571-244-0183 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: LG cellular phone, Model LG-LS755 MEID 089806183108484992; assigned telephone number 571-244-0183, as further described in Attachment A (Property to be Searched).

located in the ___Eastern___ District of ___Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (Items to be Seized).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance. |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SAUSA Michael Parker/AUSA Karen Taylor

Peter Charles, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/25/18

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



JAN 2 5 2018

IN THE MATTER OF THE SEARCH OF

LG cellular phone, Model LG- LS755
MEID 089806183108484992; assigned
telephone number 571-244-0183

CURRENTLY LOCATED AT
DEA Evidence Locker
6715 Little River Turnpike,
Annandale, Virginia 22003

1:18-SW-48

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Peter Charles, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, a single electronic device, as described in Attachment A, which is currently in law enforcement possession, and the extraction from the device of electronically stored information described in Attachment B.

2. I am a Detective with the Fairfax County Police Department, Fairfax, VA, and have been since 2000. I am currently assigned as a Drug Enforcement Administration Task Force Officer to the High Intensity Drug Trafficking Area Task Force, Washington Division Office (Group 12), located in Annandale, Virginia.

1

3. As part of my official duties I investigate criminal violations of the Controlled Substances Act, including Title 21 of the United States Code, and other offenses against the United States. I have participated in narcotics investigations resulting in the arrest and conviction of drug traffickers and the seizure of controlled substances and drug proceeds. As a result, I am familiar with the ways in which traffickers conduct their business, including but not limited to, the methods in which they facilitate, conceal, transport, and distribute illegal narcotics. I have also become familiar with the methodology used in narcotics trafficking operations, as well as the unique trafficking and smuggling patterns, and the language employed by traffickers.

4. While performing my official duties, I learned that it is common for individuals engaged in the distribution of controlled substances to use telephonic communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities. I am familiar with the use of "smart phones" and am aware that these phones play an integral role in the daily lives of individuals engaging in the distribution of controlled substances and that these individuals use cellular telephones to exchange information with customers and/or source(s) of supply through text messaging, instant messaging, and telephone conversations.

5. The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal, state and local law enforcement officers, and information obtained from interviews of cooperating sources and analysis of reports.

6. This affidavit contains information necessary to support probable cause for the instant application for a search warrant. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.  The property to be searched is an LG cellular phone, Model LG- LS755, MEID 089806183108484992 with assigned telephone number 571-244-0183 (hereinafter referred to as "the Device"). The Device is currently located in a DEA evidence locker at 6715 Little River Turnpike, Annandale, Virginia 22003. The applied for warrant would authorize a forensic examination of the Device for the purpose of identifying electronically stored data specifically described in Attachment B.

## PROBABLE CAUSE

A.  Current Charges Against Oscar Dejesus

8.  On July 29, 2017 DEA agents arrested Oscar DEJESUS (hereinafter referred to as "DEJESUS") in the Eastern District of Virginia. The Device was seized from DEJESUS at the time of arrest and has been in the lawful possession of the DEA since it was seized. On November 29, 2017, a criminal complaint was issued by United States Magistrate Judge John F. Anderson (Case No. 1:17-MJ-539) charging DEJESUS with possession with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). On November 30, 2017 DEJESUS had his initial appearance. With the consultation of his attorney, DEJESUS waived his right to a probable cause hearing and was later released from custody. DEJESUS agreed to extend the time by which the United States could seek an indictment. On January 24, 2018, DEJESUS appeared before United States District Court Judge Claude M. Hilton and waived his right to be charged by indictment. He then entered a plea of guilty to a single-count information charging him with violating Title 21, United States Code, Section 841(a)(1), possession with intent to distribute 500 grams or more of a mixture containing a

3

detectable amount of cocaine. The Court accepted his plea and scheduled sentencing for April 27, 2018. (Case No. 1:18-CR-23).

B. <u>Background of DEJESUS' Arrest</u>

9. In June and July of 2017 DEA agents interviewed a Cooperating Source (CS) who provided information regarding the cocaine trafficking activities of DEJESUS. The statements made by the CS were corroborated through various investigative techniques, including database inquiries and surveillance. The CS agreed to cooperate in the investigation and provided agents with telephone number 571-244-0183 (the number for the Device). The CS told agents that the number belonged to DEJESUS and that DEJESUS used the number to facilitate drug trafficking.

10. The CS described DEJESUS as a cocaine smuggler who was associated with a larger drug trafficking organization. The CS stated that DEJESUS worked as a part time Uber driver and traveled to New York, New Jersey, and other locations on a regular basis to acquire cocaine. Based on training and experience, I am aware that both locations are source areas for cocaine.

11. The CS indicated that DEJESUS utilized rental vehicles to facilitate drug smuggling and that DEJESUS had recently acquired a newer model Chevrolet. According to the CS, DEJESUS made few efforts to conceal the drug other than to place it inside of department store shopping bags within the rental vehicle.

12. In July 2017 DEA began investigating the drug trafficking activities of DEJESUS and through several law enforcement databases learned that DEJESUS lived at a specified address in Alexandria, Virginia ("Address 1").

13. Law enforcement also issued an administrative subpoena to Sprint, the service provider for the Device, and discovered subscriber information in the name of Oscar DEJESUS, at address 1 in Alexandria, Virginia.

14. Law enforcement later accessed an Enterprise car rental open source database and conducted an inquiry via the driver's license number belonging to DEJESUS. The inquiry revealed multiple car rentals under the name Oscar DEJESUS from the Enterprise located at 6345 Livingston Road, Oxon Hill, MD.

15. In July 2017 agents spot-checked the residence of DEJESUS and observed a burgundy Chevrolet Malibu matching the description of the vehicle information that was previously provided by the CS. A database check revealed that the vehicle was associated with XCHANGE LEASING LLC. XChange Leasing LLC is a company associated with Uber, offering prospective drivers the ability to lease vehicles through their employment with Uber.

16. On July 28, 2017, law enforcement received information that the Chevrolet Malibu was located in Brooklyn, NY. Based on the vehicle data, law enforcement applied for and was authorized a Commonwealth of Virginia search warrant authorizing the disclosure of real-time location-based data for the Device.

C. <u>Seizure and Use of the Device by DEJESUS</u>

17. On July 29, 2017 location data revealed that the Device was moving in a southbound direction from New York toward Virginia. Law enforcement established surveillance at various locations along southbound I-95. At approximately 6:49 p.m., law enforcement located the burgundy Chevrolet Malibu north of Baltimore, Maryland, and later identified DEJESUS as the driver of that vehicle, which was traveling southbound I-95 into Virginia.

18. Law enforcement maintained surveillance of the vehicle until the vehicle entered the Commonwealth of Virginia. At approximately 8:24 p.m., law enforcement conducted a stop of the vehicle in Alexandria, Virginia for violation of Virginia Code 46.2-1054 (Suspension of objects or alteration of vehicle so as to obstruct driver's view). Specifically, a lanyard was hanging from the vehicle's rearview mirror obstructing the driver's view. DEJESUS provided law enforcement with a driver's license and voluntarily gave consent to search the vehicle. Law enforcement recognized a strong smell of marijuana and DEJESUS was detained at this time.

19. DEJESUS consented to a search of the vehicle resulting in the discovery by law enforcement of multiple packages that contained a white chalky substance that field-tested positive for the presence of cocaine. Three of the packages were recovered from a leather satchel located in the rear passenger seat. One of the packages was labeled with the numbers "500." DEJESUS acknowledged to law enforcement that a second package contained four hundred grams of cocaine.

20. A chemical analysis of the substance by the DEA Mid-Atlantic Laboratory in Largo, Maryland, identified the substance as Cocaine Hydrochloride, with a net weight of 1009.7 grams.

21. DEJESUS was in possession of the Device at the time of his arrest and claimed ownership of the Device. DEJESUS cooperated with law enforcement and consented to a search of the Device. Based on DEJESUS' consent, on that same date and while in DEJESUS' presence, law enforcement reviewed the Device's driving and text message applications. DEJESUS' driving history revealed a listing for Howell, New Jersey. DEJESUS' text message history revealed a communication with a New Jersey cellular number (the "New Jersey number"), dated July 28, 2017. The text message consists of the following:

DEJESUS (using the Device): "On my way up and coming straight back should be in your hood around 5-6pm"

New Jersey number: "My bad im n NC dey gave my aunt 4 days to live…I think i made lik 14 but will b bac on monday…"

22. Based on my knowledge of the investigation, I believe that DEJESUS was utilizing the Device to discuss a drug transaction with the New Jersey number. Based on the conversation, I believe that DEJESUS is speaking with an individual with whom he has a past drug relationship and that the term "14" is in reference to a dollar amount pertaining to the past sale of a quantity of drugs.

23. In January 2018, law enforcement issued an administrative subpoena to Sprint, the service provider for the New Jersey number, and discovered a Brick, New Jersey address along with named subscriber information (the "Subscriber"). Law enforcement queried the Subscriber information in multiple databases and learned that the Subscriber was previously indexed in a DEA case file as a New Jersey drug trafficker. The inquiries also revealed that the Subscriber had multiple contacts with law enforcement involving controlled and dangerous substances.

24. DEJESUS took responsibility for possessing the cocaine and gave a statement to law enforcement subsequent to receiving his Miranda warnings. DEJESUS stated that he utilized the Device to facilitate the cocaine transaction and that he traveled from Virginia to New York the day before, where he met an unknown Hispanic male and purchased, what DEJESUS believed to be, five to six hundred grams of cocaine for $13,000. DEJESUS stated he then transported the cocaine to a Howell, New Jersey hotel where he maintained possession of the drug overnight until traveling back to Virginia the following day.

25. As of now, DEA does not have all necessary authority to examine the Device. I seek this warrant out of an abundance of caution to be certain that an examination of the Device will comply with Fourth Amendment and all other applicable laws. The Device is currently in storage at the DEA Annandale, Virginia office. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## USE OF TELEPHONE AND STORAGE MEDIA BY DRUG TRAFFICKERS

26. Based on my training, experience, and participation in narcotic and drug-related investigations and my knowledge of this case, I know that:

 a. It is common for individuals engaged in the distribution of controlled substances to use telephonic communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities by coordinating the distribution of narcotics, illegal proceeds of narcotics trafficking, and other efforts of co-conspirators;

 b. Individuals engaging in the distribution of controlled substances use cellular telephones and cellular telephone technology to communicate and remain in constant contact with customers and the sources of those controlled substances;

 c. Individuals who engage in the distribution of controlled substances use cellular telephones to exchange information with customers and/or source(s) of supply through text messaging and instant messaging in addition to direct telephone conversations. It is also common for narcotics traffickers to send photographs and videos as exchange of information with customers and/or source(s) of supply; and

    d. Individuals who engage in the distribution of controlled substances frequently maintain information, personal records, photographs, and documents in an electronic format on computers and/or smart phones.

## TECHNICAL TERMS

27. Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a

variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*: A GPS navigation device that uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of a network of U.S. satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly

transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

f. *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are within the same state.

28. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.lg.com, I know that the Device could have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and for what purposes.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

30. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

13

many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time during the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Peter Charles
TFO
Drug Enforcement Administration

Subscribed and sworn to before me on the 25 day of January, 2018.

Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge
Alexandria, Virginia

## **ATTACHMENT A**

The property to be searched is listed below (hereinafter referred to as "the Device"). The Device is currently located in a DEA evidence locker at 6715 Little River Turnpike, Annandale, Virginia. The Device consists of the following: LG cellular phone, Model LG- LS755, MEID 089806183108484992; assigned telephone number 571-244-0183. The applied-for warrant would authorize a forensic examination of the Device for the purpose of identifying electronically stored data specifically described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of the Federal Criminal Code involving controlled substances and Oscar DEJESUS ("DEJESUS"), including:

   a. Any conversations, whether through text messages or other applications, where DEJESUS discusses cocaine or any other controlled substance;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording DEJESUS scheduled to the date the Device came into law enforcement possession;

   f. any photographs of controlled substances; and

   g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.